United States Court of Appeals

For the First Circuit

____________________

No. 92-2408

IN RE: MARK NELSON,

Debtor,

____________

MARK NELSON,

Appellant,

v.

LINDA WIHBEY TAGLIENTI, ET AL.,

Defendants, Appellees.

____________________

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. A. David Mazzone, 
U.S. District Judge
]

____________________

Before

 Breyer, 
Chief Judge
,

Selya and Stahl, 
Circuit Judges
.

____________________

Domenic S. Terranova
 for appellant.

Linda T. Wihbey
, with whom 
, 
Philipp G. Grefe
, and 
,
 were on brief for appellees.

____________________

June 3, 1993

____________________

STAHL, 
Circuit Judge
. Plaintiff-appellant Mark Nelson (Mark) claims that the bankruptcy and district courts erred in dismissing his suit for damages against his former wife, Paula Nelson Fiorenza (Paula), and her attorneys. He alleges that defendants willfully violated an automatic stay provided by the bankruptcy code when they instituted equity actions in state court which interfered with the sale of the former marital home. We disagree and affirm.

I.

Background

The Nelsons were married on February 2, 1985, and resided at 16 Dorchester Street, Wilmington, Massachusetts. On February 12, 1991, they executed a marital agreement which subsequently became part of a divorce judgment. Under the terms of that agreement, Mark was obligated to pay Paula $200 weekly as child support for the benefit of their eight year-old daughter. The agreement further obligated him to maintain the first and second mortgages on the former marital home, and actively to list and market the property for sale.
1:
According to defendants' brief in bankruptcy court, the agreement also provided that Paula Nelson transfer her right, title and interest in 16 Dorchester Street to Mark. As we read the agreement, she was required to transfer her right, title and interest in six Wilmington properties, including 18 Dorchester Street, but 
not
 16 Dorchester Street. It is unclear to us, therefore, who held title to 16 Dorchester Street as of February 12, 1991.

On March 22, 1991, for $1.00 consideration, Mark transferred all of his right, title and interest in 16 Dorchester Street to his father, George Nelson, as trustee.
2:
At oral argument, plaintiff's counsel contended that prior to the transfer, the property was in a real estate trust, with Mark and Paula as both trustees and lifetime beneficiaries. Counsel argued that a second real estate trust had been established well in advance of March 1991, and that the "transfer" really amounted to a mere substitution of George Nelson for Mark as trustee. There is no evidence in the record as to whether such trust arrangements ever existed. Nor is there any evidence that Paula surrendered her interest as either trustee or lifetime beneficiary of 16 Dorchester Street in the marital agreement. 
See
 n.1 
supra
.

 When Mark failed to make child support payments, Paula began enforcement efforts in the Middlesex County Probate and Family Court. On May 8, 1991, and October 24, 1991, the court entered judgments of contempt against him. The second contempt judgment resulted in a 120-day jail sentence, suspended until November 8, 1991, "to see if all arrears are paid." A 

hearing on the contempt judgment was continued to November 12, 1991. On November 8, 1991, Mark filed a voluntary, "skeleton"
3:
A "skeleton" bankruptcy petition does not include the required itemized lists of assets and liabilities. Petitioners obtain leave to file those lists at a later date. After receiving two such extensions of time in which to file the supporting documents, Mark filed the schedules to accompany his Chapter 13 bankruptcy petition on December 26, 1991. He listed 16 Dorchester Street as real property in which he held an equitable interest of one-half, and on which there were mortgages of $105,214.93 and $68,765.84. Given counsel's argument that Paula had relinquished all interest in the property, 
see
 n.1 
supra
, it is unclear who held the remaining one-half beneficial interest in the property.

 petition for bankruptcy under Chapter 13 in the Bankruptcy Court for the District of Massachusetts. On November 12, 1991, Mark filed in the Probate Court a suggestion of bankruptcy and a motion to continue the pending contempt action. Subsequently, on November 25, 1991, Paula proceeded to file another action in that court seeking an attachment and temporary restraining order to prevent the transfer of the 16 Dorchester Street property.
4:
She appears to have done so after learning that 16 Dorchester Street was the subject of a purchase and sale agreement.

 According to defendants, during these proceedings, Judge McGovern of the Probate Court directed the parties to meet with the Chapter 13 trustee in bankruptcy, Joseph Szabo. Defendants assert that trustee Szabo "agreed to execute a stipulation allowing for the sale of the property, asserting that the bankruptcy estate did not claim any right, title or interest in the property, as said property stood in the name of George Nelson, not the Debtor Mark Nelson." Mark does not dispute defendants' version of what transpired.

The Probate Court issued a temporary restraining order on December 9, 1991, with a return date of December 19, 1991. On December 17, 1991, Mark filed another suggestion of bankruptcy and motion to continue. On December 19, 1991, the Probate Court issued an interlocutory order continuing the restraining order in force. The pending sale of 16 Dorchester Street fell through when, according to Mark, Paula refused to provide relief from the liens on the property.

In response, defendants moved to dismiss the action for failure to state a claim.

On February 15, 1992, Mark converted his Chapter 13 bankruptcy petition to a Chapter 7 petition. Subsequently, the mortgagee successfully petitioned the bankruptcy court for relief from the stay in order to permit it to proceed to foreclose on its 16 Dorchester Street mortgage, an action which ultimately occurred. 

On May 22, 1992, the bankruptcy court dismissed Mark's adversary proceeding. He appealed to the district court which, on September 15, 1992, affirmed the judgment of the bankruptcy court. From that decision he now appeals.

II.

Discussion

Martin-Trigona
 v. 

not

willful

not
We also note that Mark's counsel conceded at oral argument that there was no way for Paula to determine from public records who held beneficial interest in the property at 16 Dorchester Street. Indeed, in retrospect, it is impossible for this court to determine whether the property was properly part of the bankruptcy estate. The ambiguous record of this case contains no evidence that the property was ever in a real estate trust, and it is unclear whether, when and how Paula surrendered her interest in the property.

 

Given the peculiar "facts" of this case, we hold that Paula could not have "willfully violated" the automatic stay applicable to plaintiff's property, if, in fact, 16 Dorchester Street was ever covered by such a stay. Although Paula could have asked the bankruptcy court to determine whether the property was subject to a stay prior to commencing her equity actions in state court, we hold that it was reasonable for her to believe that the property was not part of the bankruptcy estate.
6:
Mark does not explicitly state which of Paula's actions interfered with the sale of 16 Dorchester Street. To the extent that he argues for a distinction between actions filed before December 26, 1991, when he filed the schedules accompanying his bankruptcy petition indicating that the bankruptcy estate had an equitable interest in the property, and those initiated thereafter, he does so in a most perfunctory manner. This court has often warned litigants that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." 
United States
 v. 
Zannino
, 895 F.2d 1, 17 (1st Cir.), 
cert.
 
denied
, 494 U.S. 1082 (1990).

 Indeed, we believe that the record in this case makes it so obvious that Paula's actions could not have been willful that we find this appeal frivolous. See Fed. R. App. P. 38. Therefore, we award the defendants the sum of $2,000 to cover both appellate costs and appellate attorneys' fees said fees to run jointly and severally against appellants and his counsel.
7:
Because defendants did not cross-appeal the denial of their motion for costs and fees below, they failed to preserve that issue on appeal.

 
The decision of the district court is affirmed
.